Shaun H. Crosner (SBN 259065)
SCrosner@PasichLLP.com
Jacquelyn M. Heitman (SBN 278337)
JHeitman@PasichLLP.com
PASICH LLP
1230 Rosecrans Avenue, Suite 690
Manhattan Beach, CA 90266
Telephone: (424) 313-7860
Facsimile: (424) 313-7890

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYE BIOSCIENCE, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>PARTNER RE IRELAND INSURANCE DAC,<br><br>Defendant. | Case No. 2:23-cv-01218<br><br>**COMPLAINT FOR**<br><br>**1. BREACH OF CONTRACT**<br><br>**2. TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**3. DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1    Plaintiff Skye Bioscience, Inc., formerly known as Nemus Bioscience, Inc.

2  ("Skye"), complains of defendant Partner Re Ireland Insurance dac ("PartnerRe")

3  and alleges as follows:

4                    **Nature of This Lawsuit**

5    1.    This is a lawsuit by Skye to recover the full amounts owed under a

6  Directors, Officers and Company Liability ("D&O") insurance policy issued by

7  PartnerRe. It arises out of PartnerRe's wrongful and bad faith refusal to defend and

8  indemnify Skye against claims asserted against the company in an underlying

9  lawsuit titled *Cunning v. Skye Bioscience Inc*., United States District Court, Central

10  District of California, Case No. 8:21-cv-00710 (the "*Cunning* lawsuit"). The

11  *Cunning* lawsuit alleges securities violations and specifically seeks damages for

12  violations of the Sarbanes-Oxley Act, a securities regulation. Accordingly, the

13  *Cunning* lawsuit falls squarely within the coverage afforded under the policy

14  PartnerRe sold to Skye. However, rather than honoring its duties in connection with

15  the *Cunning* lawsuit, PartnerRe chose to abandon its insured and repudiate its

16  coverage obligations, thereby causing Skye to suffer considerable damages. By this

17  lawsuit, Skye seeks to recover the policy benefits to which it is entitled, plus

18  interest, attorneys' fees, and punitive damages.

19                    **Jurisdiction and Venue**

20    2.    The Court has subject matter jurisdiction to hear this case under 28

21  U.S.C § 1332 based on complete diversity of citizenship between the parties and

22  because the amount in controversy, exclusive of costs and interest, exceeds $75,000.

23    3.    Venue is proper in this District because a substantial part of the events

24  giving rise to Skye's claims, including the delivery of the insurance policy at issue

25  in this litigation and the defense and litigation of the *Cunning* lawsuit, occurred in

26  this District. PartnerRe has also marketed, advertised, sold, and maintained

27  insurance policies, and otherwise conducted extensive business, within this District.

28

**The Parties**

4.     Skye is a Nevada corporation with a principal place of business in San Diego, California. Skye is a cutting-edge biopharmaceutical company, focused on the discovery, development and commercialization of new chemical entities derived from bioengineered cannabinoid molecules, such as THC and CBD. Skye is developing new and proprietary products designed to improve therapeutic treatments for multiple diseases, with a primary focus on ocular diseases.

5.     Skye is informed and believes, and on that basis alleges, that Partner Re is a company organized under the laws of Ireland and has its principal place of business in Dublin, Ireland. Skye is informed and believes, and on that basis alleges, that PartnerRe is authorized to transact business, and transacts business, in the State of California and the County of Los Angeles.

**The Policy**

6.     PartnerRe issued Directors, Officers and Company Liability Policy No. B0621PNEMU000218 (the "Policy") to Skye (then known as Nemus Bioscience, Inc.) for the period of December 31, 2018, to December 31, 2020. Subject to a retention of $250,000 per claim, the Policy provides $5,000,000 in aggregate coverage for "Loss" resulting from each "Securities Claim." A true and correct copy of at least the relevant portions of the Policy is attached hereto as Exhibit A and incorporated by reference.

7.     The Policy obligates PartnerRe to:

> pay on behalf of [Skye] **Loss** resulting from any **Securities Claim** first made against the **Company** during the **Policy Period** for a **Wrongful Act**.

Exhibit A, § I.C.

8.     The Policy defines "Securities Claim" to mean:

> any demand or proceeding [as more fully defined as a **Claim**] . . . against any of the **Insureds** . . .

alleging any violation of the Securities Act of 1933, the Securities Exchange Act of 1934, rules or regulations of the Securities and Exchange Commission under either or both Acts, similar securities laws or regulations of any federal, state (including any state blue sky laws), local or any foreign jurisdiction, any other laws, rules, regulations or statutes regulating securities or any common law arising out of, involving, or relating to the ownership, purchase, sale or distribution of or offer to purchase, sell or distribute any securities of the Company, including any debt or equity securities, whether on the open market or through a public or private offering . . . .

*Id.*, § II.X.

9.     The Policy defines "Claim" in pertinent part to mean:

any written demand . . . against any of the **Insureds,** or any civil . . . proceeding . . . against any of the **Insureds,** including:

(a) any appeal from any such proceeding.

*Id.,* § II.B.1.

10.     The Policy defines "Loss" to mean:

(a) damages, judgments, including pre and post-judgment interest, and settlements,

(b) **Inquiry Costs** and **Costs, Charges and Expenses,** and

4

1       (c) punitive, exemplary or multiplied damages where

2         the applicable law allows coverage for punitive,

3         exemplary or multiplied damages . . . .

4   *Id.*, § II.O.

5       11.    "Costs, Charges and Expenses" is defined in the Policy to include

6   "reasonable and necessary legal fees and expenses including reasonable and

7   necessary expert fees incurred by the **Insureds** in defense and appeal of any

8   **Claim**." *Id.* § II.E.

9       12.    The Policy defines "Wrongful Act" to mean:

10       any actual or alleged act, error, omission, misstatement,

11       misleading statement, neglect or breach of duty:

12       . . .

13       3. by the **Company** involving a **Securities Claim**.

14   *Id.* § II.BB.

15       13.    The Policy further states that "[m]ore than one **Claim** involving the

16   same **Wrongful Act** . . . shall be deemed to constitute a single **Claim** and shall be

17   deemed to have been made . . . the date on which the earliest **Claim** involving the

18   same **Wrongful Act** . . . is first made." *Id.* § IV.C.

19   <u>**The *Cunning* Lawsuit and PartnerRe's Breaches**</u>

20       14.    On or about August 6, 2019, during the Policy's policy period, Skye

21   received a demand letter from counsel for former employee Wendy Cunning. In her

22   demand letter, Ms. Cunning alleged, among other things, that she had been

23   wrongfully terminated after she complained about Skye's unlawful conduct, which

24   she claimed included various violations of federal securities laws.  She alleged that

25   Skye's purported retaliation against her violated the Sarbanes-Oxley Act of 2002

26   and other state and federal laws.  In her August 6, 2019, letter, Ms. Cunning

27   demanded that Skye pay her significant sums to compensate her for Skye's alleged

28   wrongful acts and conduct.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

15.    On or about September 12, 2019, Skye reported Ms. Cunning's August 6, 2019, demand letter to PartnerRe, seeking coverage under the Policy.  On or about September 18, 2019, PartnerRe acknowledged receipt of Ms. Cunning's demand letter and agreed to treat Skye's notice as a circumstance which could give rise to a Claim under the Policy.

16.    On April 16, 2021, Wendy Cunning filed a lawsuit against Skye in the United States District Court, Central District of California. Ms. Cunning's complaint included the same general allegations as those made in her August 6, 2019, demand letter.  Ms. Cunning's complaint included causes of action for (1) Violation of Whistleblower Protections under the Sarbanes-Oxley Act (18 U.S.C. § 1514A *et seq*.); (2) Retaliation under California Labor Code § 1102.5; (3) Wrongful Termination in Violation of Public Policy; and (4) Intentional Inflection of Emotional Distress.  A true and correct copy of the April 16, 2021, complaint in the *Cunning* lawsuit is attached hereto as Exhibit B and incorporated by reference.

17.    On November 29, 2021, Ms. Cunning filed her First Amended Complaint, which included substantially similar allegations as her original complaint. Ms. Cunning's First Amended Complaint includes causes of action for (1) Violation of Whistleblower Protections under the Sarbanes-Oxley Act (18 U.S.C. § 1514A *et seq*.) and (2) Retaliation under California Labor Code § 1102.5. A true and correct copy of the November 29, 2021, complaint in the *Cunning* lawsuit is attached hereto as Exhibit C and incorporated by reference.

18.    In her lawsuit, Ms. Cunning alleges that Skye, through a former company director, engaged in "conduct – [including] misleading investors and insider trading – [that constituted] violations of [the Sarbanes-Oxley Act of 2002], securities laws and other possible legal violations." *See* Exhibit B, ¶ 32; *see also* Exhibit C, ¶ 37. As noted above, the *Cunning* lawsuit included a claim for violation of the Sarbanes-Oxley Act.

19.     When Congress enacted the Sarbanes-Oxley Act in 2002, it expressly amended the Securities Act of 1934 to include the Sarbanes-Oxley Act. *See* SARBANES–OXLEY ACT OF 2002, PL 107–204, July 30, 2002, 116 Stat 745. Thus, by operation of this Congressional amendment, a violation of the Sarbanes-Oxley Act is also considered a violation of the Securities Act of 1934.

20.     Skye promptly reported the *Cunning* lawsuit to PartnerRe, seeking coverage under the Policy. Pursuant to the Policy's terms, because Ms. Cunning's August 6, 2019, demand letter and her subsequent lawsuit were premised on similar allegations and alleged the same "Wrongful Acts," the *Cunning* lawsuit is deemed to be a "Claim" first made during the Policy's policy period.

21.     Pursuant to the Policy's plain terms, the *Cunning* lawsuit constitutes a "Securities Claim" alleging "Wrongful Acts" against Skye. Accordingly, it falls squarely within the Policy's coverage. However, without performing any meaningful investigation into Skye's claims, and without regard to the breadth of coverage afforded under its Policy, PartnerRe unreasonably and incorrectly denied coverage. PartnerRe based its denial on an unreasonably narrow interpretation of the phrase "Securities Claim," contrary to its duties under the Policy and the law.

22.     Specifically, in denying coverage, PartnerRe incorrectly asserted that the *Cunning* lawsuit did not qualify as a covered "Securities Claim" as defined in the Policy. PartnerRe took this position even though the *Cunning* lawsuit plainly alleges securities law violations and includes a cause of action for violation of the Sarbanes-Oxley Act, a securities law. PartnerRe's position was and is contrary to the law and the facts.

23.     As a result of PartnerRe's wrongful denial, Skye was forced to fund its own defense in the *Cunning* lawsuit. To date, Skye has been forced to pay approximately $1,443,205 in defense fees and costs incurred in connection with the *Cunning* lawsuit without any assistance from PartnerRe, and Skye continues to incur legal fees and costs in connection with its defense. Furthermore, through its

7

wrongful denial of coverage, PartnerRe has repudiated its duty to indemnify Skye in connection with the *Cunning* lawsuit.

24.    Through its wrongful denial and the other unreasonable conduct described above, PartnerRe breached its contractual obligations under the Policy and acted in bad faith.

25.    A jury trial was conducted in the *Cunning* lawsuit in January 2023.  On January 18, 2023, the jury rendered a verdict in favor of Ms. Cunning and awarded her $4,853,460 in damages. The parties to the *Cunning* lawsuit are expected to file various post-trial motions in the coming weeks.

26.    To the extent not waived or otherwise excused, Skye complied with all terms and conditions precedent contained in the Policy. Therefore, Skye is entitled to all benefits of insurance provided by the Policy.

### First Cause of Action

### (*For Breach of Contract*)

27.    Skye realleges and incorporates by reference paragraphs 1 through 26 above, inclusive.

28.    PartnerRe has a duty under the Policy, the law, and insurance industry custom and practice to pay Skye's fees and costs incurred in connection with the defense of the *Cunning* lawsuit. PartnerRe's duty arose at least at the time Skye's reasonable and necessary defense fees and costs exceeded the Policy's applicable retention and will continue through final resolution of the *Cunning* lawsuit, or until the Policy has been exhausted.

29.    PartnerRe also has a duty under the Policy to indemnify Skye for any settlement or judgment in the *Cunning* lawsuit.

30.    Furthermore, PartnerRe had a duty under the Policy, the law, and insurance industry custom and practice to promptly conduct a full and thorough investigation, including all bases that might support Skye's claim for coverage for the *Cunning* lawsuit. PartnerRe also had a duty to give at least as much

8

1  consideration to Skye's interests as it gave its own interests in assessing coverage

2  for the *Cunning* lawsuit.

3       31.    PartnerRe breached its duties under the Policy by, among other things,

4          a.    Failing to perform a meaningful investigation into Skye's claim

5               for coverage for the *Cunning* lawsuit;

6          b.    Failing and refusing to pay or reimburse Skye's legal fees and

7               costs incurred in connection with the defense of the *Cunning*

8               lawsuit;

9          c.    Failing to acknowledge its duty to indemnify Skye for any

10               settlement or judgment in the *Cunning* lawsuit;

11          d.    Asserting grounds for limiting coverage for the *Cunning* lawsuit

12               that it knows are not supported by, and in fact are contrary to, the

13               terms of the Policy, the law, insurance custom and practices, and

14               the facts; and

15          e.    Otherwise refusing to perform duties under the Policy.

16       32.    As a direct and proximate result of PartnerRe's breach of contract,

17  Skye has sustained at least $1,443,205 in damages, plus interest at the legal rate.

18  Skye continues to suffer damages because of PartnerRe's contractual breaches and

19  will seek leave to amend this complaint once it ascertains the full extent of its

20  damages.

21  **Second Cause of Action**

22  (***For Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing***)

23       33.    Skye realleges and incorporates by reference paragraphs 1 through 26

24  above, and 28 through 31 above, inclusive.

25       34.    Implied in the Policy was a covenant that PartnerRe would act in good

26  faith and deal fairly with Skye, that PartnerRe would do nothing to interfere with the

27  rights of Skye to receive benefits due under the Policy, and that PartnerRe would

28

PASICH

give at least the same level of consideration to Skye's interests as it gave to its own interest.

35. PartnerRe also had a duty under the Policy, the law, and insurance industry custom, practice, and standards to conduct a prompt and thorough investigation including all of the bases that might support Skye's claim for coverage, before asserting coverage defenses or denying coverage.

36. Instead of complying with these duties, PartnerRe breached its implied covenant of good faith and fair dealing and acted in bad faith by, among other things,

    a. Failing to promptly conduct a full and thorough investigation of the *Cunning* lawsuit;

    b. Failing to inquire into bases that might support coverage for the *Cunning* lawsuit;

    c. Unreasonably failing and refusing to honor its promises and representations in the Policy;

    d. Wrongfully and unreasonably asserting grounds for denying coverage for the *Cunning* lawsuit that it knows are not supported by, and in fact are contrary to, the terms of the Policy, the law, insurance custom and practices, and the facts;

    e. Giving greater consideration to its own interests than it gave to Skye's interests; and

    f. Otherwise acting as alleged above.

37. In breach of the implied covenant of good faith and fair dealing, PartnerRe did the things and committed the acts alleged above for the purpose of consciously withholding from Skye the rights and benefits to which it is and was entitled under the Policy. PartnerRe's acts are inconsistent with the reasonable expectations of Skye, are contrary to established insurance industry custom and

1  practice, are contrary to legal requirements, are contrary to the express terms of the

2  Policy, and constitute bad faith.

3      38.    Skye's damages were foreseeable given the purpose of the Policy was

4  to provide coverage for "Securities Claims" like the *Cunning* lawsuit.

5      39.    As a direct and proximate result of PartnerRe's acts, Skye has sustained

6  at least $1,443,205 in damages, plus interest at the legal rate. Skye continues to

7  suffer damages because of PartnerRe's bad faith and will seek leave to amend its

8  complaint once Skye ascertains the full extent of its damages. Also, pursuant to

9  *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), Skye is entitled to recover

10  attorneys' fees that it has previously incurred, and continues to incur, in its efforts to

11  obtain the benefits due under the Policy that PartnerRe wrongfully withheld, and is

12  withholding, in bad faith. Skye also is entitled to interest thereon at the maximum

13  legal rate.

14      40.    Skye is informed and believes, and on that basis alleges, that

15  PartnerRe—acting through one or more of its officers, directors, or other corporate

16  employees with substantial independent and discretionary authority over significant

17  aspects of its business—performed, authorized, or ratified the bad faith conduct

18  alleged above.

19      41.    PartnerRe's conduct is despicable and has been done with a conscious

20  disregard of Skye's rights, constituting oppression, fraud, and/or malice. PartnerRe

21  has engaged in a series of acts designed to deny Skye the benefits due under the

22  Policy. Specifically, PartnerRe, by acting as alleged above, in light of information,

23  facts, and relevant law to the contrary, consciously disregarded Skye's rights and

24  forced Skye to incur substantial financial losses, thereby inflicting substantial

25  financial damage on Skye. PartnerRe ignored Skye's interests and concerns with the

26  requisite intent to injury within the meaning of California Civil Code section 3294.

27  Therefore, Skye is entitled to recover punitive damages from PartnerRe in an

28

1  amount sufficient to punish and to make an example of PartnerRe and to deter
2  similar conduct in the future.

### Third Cause of Action

### (*For Declaratory Relief*)

42.    Skye realleges and incorporates by reference paragraphs 1 through 26 above.

43.    A controversy exists between Skye and PartnerRe. Skye contends that PartnerRe has a duty to cover Skye's defense costs in incurred in connection with the *Cunning* lawsuit and indemnify Skye for any settlement or judgment in the *Cunning* lawsuit. PartnerRe disputes Skye's contentions.

44.    Therefore, declaratory relief is necessary to determine Skye's rights under the Policy. Specifically, Skye seeks a declaration from the Court that PartnerRe is obligated to reimburse Skye for the defense fees and costs it incurred in defense of the *Cunning* lawsuit. Skye further seeks a declaration from the Court that PartnerRe is obligated to indemnify Skye for any settlement or judgment in the *Cunning* lawsuit.

45.    A declaration is necessary at this time so that the parties' dispute may be resolved and that the parties may be aware of their respective rights and duties.

### Prayer for Relief

WHEREFORE, Skye prays for relief as follows:

### On the First Cause of Action

1.    For damages, plus interest, according to proof at the time of trial;

### On the Second Cause of Action

2.    For damages according to proof at the time of trial, including reasonable attorneys' fees incurred in obtaining the benefits due under the Policy, plus interest;

3.    For punitive damages in an amount to be determined at the time of trial;

**On the Third Cause of Action**

4.    For a declaration in accord with Skye's contentions stated above;

**On All Causes of Action**

5.    For costs of suit incurred herein; and

6.    For such other, further, and/or different relief as may be deemed just and proper.


DATED: February 17, 2023                    PASICH LLP


                                     By: */s/ Jacquelyn M. Heitman*
                                          Shaun H. Crosner
                                          Jacquelyn M. Heitman
                                          Attorneys for Plaintiff

COMPLAINT AND DEMAND FOR JURY TRIAL

1

### Demand for Jury Trial

2    Plaintiff Skye Bioscience, Inc. hereby demands a trial by jury in this action.

3

4    DATED: February 17, 2023              PASICH LLP

5

6                                          By: */s/ Jacquelyn M. Heitman*
                                               Shaun H. Crosner
7                                              Jacquelyn M. Heitman
                                               Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT AND DEMAND FOR JURY TRIAL**